IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ABACUS FINE CARPENTRY, LLC, | ) | No. 80324-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| VIVIAN H. WILSON and RUSSELL D. WILSON, | ) | |
| | ) | |
| Petitioners. | ) | |
| | ) | |

HAZELRIGG, J. — Abacus Fine Carpentry, LLC brought suit against Vivian and Russell Wilson for collection of payment based on a cabinet installation project in the Wilsons' home for which the parties had contracted. The Wilsons filed a motion for summary judgment arguing Abacus was statutorily barred from bringing suit because it was not bonded at the time of the project. Abacus does not dispute its bond had lapsed. The trial court denied the motion and the Wilsons now appeal, arguing RCW 18.27.040(1) suspends a contractor's registration by operation of law when a contractor's bond lapses. We agree with the plain language interpretation of the statute advanced by the Wilsons and reverse for dismissal.

FACTS

Abacus Fine Carpentry, LLC (Abacus) is a construction contractor that has been engaged in business in Washington since 2006. In April 2016, Vivian and

Russell Wilson (collectively, the Wilsons) hired Abacus to install cabinet doors, drawers, and appliance panels to preexisting custom-built cabinets at their residence. Abacus held itself out as a licensed construction professional.

Abacus' bond was cancelled effective June 17, 2010 for nonpayment of the premium. Nationwide Mutual Insurance Company (Nationwide) sent written notice of the bond cancellation to the Department of Labor and Industries (Department), Abacus, and A.L. Insurance Group, Inc. Four years prior to the cancellation of the bond, Nationwide issued a rider changing the number of Abacus' contractor bond. The Department apparently did not update its records to reflect the changed bond number. The Department received the notice of bond cancellation in 2010, but did not timely update its records to note the cancellation, likely because of its prior failure to recognize the changed bond number. Abacus admits it did not maintain a valid contractor's bond during the years 2010 to 2019.

In October 2018, Abacus filed a complaint in King County Superior Court claiming the Wilsons owed payment for the cabinet project. In December, the Wilsons filed their answer, affirmative defenses, counterclaims, and a third-party complaint against Nationwide as the issuer of the bond. In their counterclaims and third-party complaint, the Wilsons asserted a claim and sought judgment against Abacus' registration bond pursuant to RCW 18.27.040. In March 2019, however, counsel for Abacus advised the Wilsons that Nationwide had cancelled Abacus' bond effective June 17, 2010. This prompted the Wilsons to dismiss their third-party complaint against Nationwide. The Wilsons filed their amended answer and counterclaims pursuant to a CR 15(a) stipulation.

In May 2019, the Wilsons filed a motion for summary judgment seeking dismissal of all claims asserted by Abacus. They asserted Abacus was barred from pursuing collection based on RCW 18.27, given its failure to maintain a contractor's registration bond. Abacus opposed the motion, arguing its failure to maintain the bond during the project was unwitting and unintentional. Abacus did not deny that Nationwide sent notice of the bond's cancellation. In June 2019, the Wilsons' motion was denied after a hearing on the merits. Following the ruling, the Wilsons filed an unsuccessful motion for reconsideration. In August 2019, the Wilsons filed a notice of discretionary review, and all parties approved a stipulation for that purpose. This court granted review.

ANALYSIS

Our state law is clear that in order for a contractor to bring a claim in Washington, they must be registered at the time the contract for the project in question was entered.

> No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he or she was a duly registered contractor and held a current and valid certificate of registration at the time he or she contracted for the performance of such work or entered into such contract.

RCW 18.27.080. As such, the status of Abacus' bond and registration are foundational questions for our review. If a contractor's bond lapses or is cancelled, the contractor's registration is suspended via RCW 18.27.040(1). There is no

dispute that Abacus was without a valid bond for nearly a decade while contracting for various projects, including the one with the Wilsons.

The primary question presented to this court is one of statutory interpretation involving this language contained within RCW 18.27.040(1):

> A cancellation or revocation of the bond or withdrawal of the surety from the bond automatically suspends the registration issued to the contractor until a new bond or reinstatement notice has been filed and approved as provided in this section.

Specifically, this case requires us to determine the meaning of "automatic" as used in this passage. The Wilsons assert that the proper interpretation is that, without a valid bond, a contractor automatically loses their registration through operation of law, meaning no action by the Department is required. Abacus avers that "automatic" as used in the statute simply means the Department has no discretion in suspending the contractor's registration, but that Department action is still required before a suspension becomes effective against the contractor.

This appeal seeks review of the order denying summary judgment which is reviewed de novo. Miller v. Likins, 109 Wn. App. 140, 144, 34 P.3d 835 (2001). Similarly, this court also utilizes a de novo standard as to questions of statutory interpretation. Cockle v. Dep't of Labor and Indus., 142 Wn.2d 801, 807, 16 P.3d 583 (2001). "The primary goal of statutory construction is to carry out legislative intent." Id. The best evidence of the legislature's intent is the statute's language. In re Marriage of Schneider, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). When "the statute's meaning is plain on its face, then the court must give effect to the plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwynn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). A statute's plain meaning is

to be discerned from the ordinary meaning of the language under scrutiny, in addition to the context of the statute in which the language is found, related provisions, and the statutory scheme as a whole. State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005), superseded by statute, State v. Conover, 183 Wn.2d 706, 355 P.3d 1093 (2015). If multiple reasonable interpretations of a statute's plain meaning exist, it is ambiguous. Cerrillo v. Esparza, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). However, a statute is not ambiguous because numerous interpretations are merely conceivable. Id. If a statute is ambiguous, this court relies on principles of statutory construction, legislative history, and relevant case law to decipher the legislative intent. State v. Manuel, 14 Wn. App. 2d 455, 461, 471 P.3d 265 (2020).

The plain meaning of RCW 18.27.040(1) is sufficient to resolve the question presented in this case. As the Wilsons advance, the statute suspends a contractor's license by operation of law when they no longer have a bond. The relevant language of RCW 18.27.040(1) states:

> The bond shall be continuous and may be canceled by the surety upon the surety giving written notice to the director. A cancellation or revocation of the bond or withdrawal of the surety from the bond automatically suspends the registration issued to the contractor until a new bond or reinstatement notice has been filed and approved as provided in this section.

The Wilsons' interpretation would require no action or notice by the Department to officially suspend a contractor's registration. This position is reinforced by the definition of "registration suspension" as used in the chapter, which means:

> [E]ither an automatic suspension as provided in this chapter, or a written notice from the department that a contractor's action is a violation of this chapter and that the contractor's registration has

been suspended for a specified time, or until the contractor shows evidence of compliance with this chapter.

RCW 18.27.010(9). This definition indicates that an automatic suspension is distinct from written notice by the Department that suspension has occurred.

The definition of registration suspension from RCW 18.27.010 undercuts Abacus' interpretation by which the Department would be required to take some form of affirmative action to suspend registration. It posits that "automatic" is merely an indicator that the Department has no discretion. However, Abacus provides no basis for where such a process or affirmative action is discussed or could be derived in the chapter on Registration of Contractors. See RCW 18.27. The reading Abacus advances for this portion of the statute fails because if the Department was still required to take action in an "automatic" way, the clause "either an automatic suspension as provided in this chapter" would be superfluous. According to their interpretation, all automatic suspensions contained within the chapter would still be subject to the following clause, "a written notice from the department that a contractor's action is a violation of this chapter and that the contractor's registration has been suspended for a specified time, or until the contractor shows evidence of compliance with this chapter." RCW 18.27.10(9). A statute's "drafters are presumed to have used no superfluous words and we must accord meaning, if possible, to every word in a statute." Metcalf v. Dep't. of Motor Vehicles, 11 Wn. App. 819, 822, 525 P.2 819 (1974).

While the interpretation of RCW 18.27.040 can be resolved through the plain meaning of the statute, particularly in light of the definitions used elsewhere in the chapter, a brief review of the purpose of the chapter on Registration of

Contractors as a whole may offer further clarification for trial courts, practitioners, and contractors. The clear public policy underlying this statute reinforces our conclusion that automatic suspension does not require any action by the Department since the goal is to protect the public from the potential risks that exist with unlicensed/unbonded contractors. RCW 18.27.140 states that the purpose of contractor registration is: "to afford protection to the public including all persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors."

With such a clear purpose provided in the chapter regarding contractor registration, it is difficult to grasp how Abacus' proposed interpretation would further that stated goal. The facts of this case reinforce the Wilsons' interpretation that the suspension of registration is automatic, as Abacus was unbonded for nearly a decade, potentially putting all of their clients during that period at risk. Understanding the suspension of the registration to be automatic when a bond is cancelled furthers the stated purpose of the act by motivating a contractor to ensure they are bonded and registered at all times. Promoting due diligence on the part of the contractor grants the public further assurances against potential issues that could arise with contractors.

Abacus argues that the lapse of their bond was "an honest mistake," but even if this court accepts that assertion, it still means that Abacus did not assess or otherwise confirm their bond status to any degree sufficient to discover their bond's cancellation for nearly a decade, including missing or disregarding the

notice of cancellation that Nationwide sent to them.[1] The facts of this case highlight the reason that the proper reading of the statutory language is one that requires no further action by the Department in order to promote the purpose of the act. As such Abacus' claims against the Wilsons were barred by RCW 18.27.080.

RCW 18.27.040(1) establishes by the plain meaning of "automatic" that no action was required by the Department to suspend Abacus' registration. By virtue of automatic suspension of its registration, RCW 18.27.080 bars Abacus from pursuing a claim for work in which it engaged while unregistered. We reverse the trial court order denying the Wilsons' motion for summary judgment and remand for entry of dismissal of Abacus' suit.

WE CONCUR:

---

[1] Abacus argues against the Wilsons' proffered interpretation of the statute by detailing several dramatic, but purely speculative, scenarios regarding consequences that could occur should we accept that interpretation. In doing so, Abacus repeatedly raises the issue of reliance upon information as to the status of licenses, judgment creditors, and other details available on the Department of Labor and Industries website. However, as the Wilsons point out, the website contains an explicit and expansive disclaimer as to the accuracy of the information contained therein, including a warning that "portions of such information may be incorrect or not current."

It is reasonable, and consistent with the express purpose of the RCW chapter on Registration of Contractors, to hold these business professionals to a standard that may require more effort than merely relying on a website to confirm the status of their own bond and license.